B27 (Official Form27) (12/09)

# United States Bankruptcy Court
## District Of FLORIDA FT. LAUDERDALE

In re LILIO CAMERE and MARIA S CAMERE
Debtor

Case No. 10-45188
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: Wells Fargo Bank, N.A., Wells Fargo Auto Finance

2. Amount of the debt subject to this reaffirmation agreement:
$19,620.35 on the date of bankruptcy $19,285.42 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 16.49% prior to bankruptcy
8.00% under reaffirmation agreement ( X Fixed Rate ____ Adjustable Rate)

4. Repayment terms (if fixed rate): $455.00 per month for 50 months

5. Collateral, if any, securing the debt: Current market value: $12,675.00
Description: 06 HONDA ACCORD VIN 1HGCM563X6A077043

6. Does the creditor assert that the debt is non-dischargeable? ___Yes X No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is non-dischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 16 | $6525.78 | 7B. Monthly income from all sources after payroll deductions | $6525.78 |
| 8A. Total monthly expenses from Schedule J, line 18 | $6501.88 | 8B. Monthly expenses | $6501.88 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $0 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $0 |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $23.90 |

11. Explain with specificity any difference between the income amounts (7A and 7B):

________________________________________________________________

12. Explain with specificity any difference between the expense amounts (8A and 8B):

________________________________________________________________

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

X ____________________
Signature of Debtor (only required if line 11 or 12 is completed)

X ____________________
Signature of Joint Debtor (if applicable, and only required if line 11 or 12 is completed)

Other Information

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: ____________________

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
✓ Yes ______ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
✓ Yes ______ No

**FILER'S CERTIFICATION****

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

____________________
Signature

Jeannette Baah-Gyimah/ Filer of Creditor
Print/Type Name & Signer's Relation to Case

** The Creditor completed Questions 1 – 6 on this form. The Debtor(s) completed the remaining questions on this form. By signing this form, the Filer is only certifying: (1) that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties; and (2) the information in Questions 1 – 6. The Filer is not certifying the accuracy of any information supplied by the Debtor(s).

Form B240A/B ALT - Reaffirmation Agreement (04/10)

☐ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
**District of FLORIDA FT. LAUDERDALE**

In re LILIO CAMERE and MARIA S CAMERE
Debtor

Case No. 10-45188
Chapter 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)

☑ Part B: Reaffirmation Agreement

☑ Part C: Certification by Debtor's Attorney

☑ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

*[**Note:** Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also:** If you complete Part E, you must prepare and file Form 240B - Order on Reaffirmation Agreement.]*

**Name of Creditor:** Wells Fargo Bank, N.A., Wells Fargo Auto Finance

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures*:**

### SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm: $19,285.42

***The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.***

**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

~~a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.~~

~~(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: ______%.~~

~~--- *And/Or* ---~~

~~(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: __________%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:~~

~~$_________ @ _________%;~~
~~$_________ @ _________%;~~
~~$_________ @ _________%.~~

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 16.49%.

--- And/Or ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: 8.00%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are: $
________ @ ________ %;
$________ @ ________ %;
$________ @ ________ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2006 HONDA ACCORD<br>VIN: 1HGCM563X6A077043 | $24,192.00 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

~~Your first payment in the amount of $__________ is due on __________ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.~~

~~— Or —~~

~~Your payment schedule will be: __________ (number) payments in the amount of $__________ each, payable (monthly, annually, weekly, etc.) on the __________ (day) of each __________ (week, month, etc.), unless altered later by mutual agreement in writing.~~

~~— Or —~~

Your payment schedule will be 50 payments in monthly installments of $455.00 commencing on 01/04/2011 and continuing on the same day of each succeeding month.

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
   Contract Type: Installment Contract; Contract Date: 11/20/2008; Account No.: 8352
   Original Credit Term: 73; Original APR: 16.49%; Original Monthly Payment: $534.87
   Original Amount Financed: $24,192.00

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

**This reaffirmation reduces: the balance from $19,620.35 to $19,285.42, the interest rate from 16.49% to 8.00%, and the monthly payment from $534.87 to $455.00 effective 12/09/2010.**

SIGNATURE(S):

Borrower:

Litio E Camere
(Print Name)

[signature]
(Signature)

Date: 1-26-11

Co-borrower, if also reaffirming these debts:

Maria S. Camere
(Print Name)

Maria S. Camere
(Signature)

Date: 1-26-11

Accepted by creditor:

Wells Fargo Bank, N.A. Wells Fargo Auto Finance
(Printed Name of Creditor)

13675 Technology Drive, Bldg. C, 2nd Floor
Eden Prairie, MN 55344-2252
(Address of Creditor)

[signature]
(Signature)

KIM MIELKE, Bankruptcy Specialist
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:
2-11-11

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

☑ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Robert Sanchez

Signature of Debtor's Attorney: ____________________

Date: 1/20/11

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, __OR__, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2* ***and*** *your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $6525.78 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $5966.88, leaving $558.90 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: ____________________
______________________________________________________________________
______________________________________________________________________.

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: [signature]
(Debtor)

[signature]
(Joint Debtor, if any)

Date: ____________________

~~— Or —~~

~~*[If the creditor is a Credit Union and the debtor is represented by an attorney]*~~

~~3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.~~

~~Signed:~~ ____________________
~~(Debtor)~~
____________________
~~(Joint Debtor, if any)~~
~~Date:~~ ____________________

# NOTE AND SECURITY AGREEMENT

**IDENTIFICATION OF PARTIES.** In this Note and Security Agreement ("**Agreement**" or "**Loan Agreement**"), the words "**you**" and "**your**" mean each Borrower who signs this Agreement; the words "**we**," "**us**," and "**our**" mean the Lender and its successors and assigns; and the word "**Owner**" means someone other than a Borrower who has an ownership interest in the Collateral (defined on page 2) and signs the Third Party Collateral Agreement on page 3.

YOUR ACCOUNT IS PAYABLE TO THE LENDER SHOWN BELOW:

Wells Fargo Bank, N.A.
3000 SW 148th Ave
Suite 115
Miramar FL 33027

**ORIGINAL**

**Florida documentary stamp tax required by law in the amount of $ 84.70 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration #94-1347393.**

Date of Loan 11/20/2008 Account Number

| Borrower (Name and Address) | Borrower (Name and Address) | Borrower (Name and Address) | Borrower (Name and Address) |
|---|---|---|---|
| MARIA S | LILIO E | | |

**YOUR PROMISE TO PAY AND THE TERMS OF REPAYMENT.** To repay your loan, you promise to pay us the Principal Amount of Loan together with interest at the Rate of Interest Per Year both as shown in the Other Transaction Information Disclosure on page 2. You will pay this sum to us in lawful money of the United States at the payment address shown on your billing statement (or such other location specified by us from time to time) in installments each month according to the Payment Schedule shown on page 2. Payments received at a location other than the payment address on your billing statement may have a delay in processing. You may prepay your loan at any time prior to maturity without penalty. If you make a partial prepayment, there will not be any change in the amount of your monthly payment or delays in due date of those payments unless we have agreed to such changes in writing. Any Loan Origination Fee as shown on Page 2 is withheld from the proceeds of your loan, is fully earned on the date of your loan and is not subject to refund.

The proceeds of this Note will be disbursed on 11/20/2008, unless we receive your signed Note after that date. If we receive your signed Note after that date, we will promptly disburse the Note proceeds on that day upon our acceptance of the Note, and we will notify you of the disbursement date. Monthly payments in the amount described in the Truth In Lending Disclosure Statement on page 2 are due beginning on the date specified on page 2 or on such other later date specified in our notice to you and on the same day of each month after that until paid.

**INTEREST-BEARING LOAN.** This is an interest-bearing loan. Except as limited by law, the interest on your loan is calculated each day based upon the unpaid balance of the Principal Amount of Loan outstanding from time to time, using the Rate of Interest Per Year shown on page 2 until paid in full. Interest accrues on the basis of actual days elapsed and a year of 365 days (366 days in a leap year). Payments will be applied to amounts you owe in the order we choose, which may vary from time to time without notice to you. Accruing interest every day will affect the total amount of interest you pay under this Agreement and the corresponding Finance Charge – your Finance Charge will be less if you pay early and more if you pay late. Any necessary adjustments to the Total of Payments will be added to or reduced from your final payment amount.

**NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION, CONSUMER PAPER, CONSUMER NOTE**

**You understand that:**

- **You should not sign this Agreement before you read the writing on all pages, even if otherwise advised.**
- **You should not sign this if it contains any blank spaces.**
- **You are entitled to an exact copy of this and any other agreement that you sign.**
- **This Agreement is the entire agreement between you and us relating to this account. Any change in this Agreement must be in writing and signed by both you and us.**
- **You may prepay the unpaid balance at any time without penalty; and**
- **SUBJECT TO APPLICABLE STATE LAW, THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION WITHOUT PRIOR NOTICE TO YOU. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO US ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.**

**SIGNATURES.** If you agree to be bound by all of the terms of this Agreement, please sign your name(s) below. All persons signing this Agreement will be fully responsible for payment in full. By signing below, you are authorizing disbursement of the loan proceeds as shown in the "Itemization of Amount Financed" box on Page 2. **You acknowledge receiving a completely filled-in Agreement.**

**BY SIGNING BELOW, YOU AGREE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT, INCLUDING THE TRUTH IN LENDING DISCLOSURE ON PAGE 2, THE ARBITRATION AGREEMENT ON PAGE 5 AND ALL OF THE TERMS ON PAGES 1 THROUGH 6 OF THIS AGREEMENT. IF YOU ARE NOT RECEIVING A TANGIBLE BENEFIT IN THE FORM OF GOODS, SERVICES, OR MONEY IN RETURN FOR SIGNING THIS AGREEMENT, PLEASE READ THE NOTICE TO CO-SIGNER ON PAGE 6 BEFORE SIGNING THIS AGREEMENT.**

→ [signature] 11-20-08 SIGN HERE → SIGN HERE
→ [signature] 112008 SIGN HERE → SIGN HERE

## ADDITIONAL TERMS

### FEDERAL TRUTH IN LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE: the cost of your credit as a yearly rate. | FINANCE CHARGE: the dollar amount the credit will cost you. | Amount Financed: the amount of credit provided to you or on your behalf. | Total of Payments: the amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 16.49% | $ 14318.64 | $ 24192.00 | $ 38510.64 |

**Your Payment Schedule Will Be As Follows:**

| Number of Payments | Amount of Payments | Payments are Due Monthly beginning: | Final Payment Due: |
|---|---|---|---|
| 72 | $ 534.87 | 01/04/2009 and on the same day each month thereafter. | 12/04/2014 |

**Late Charge:** If any part of a payment is more than 10 days late, you will be charged a late charge equal to $39.00.

**Prepayment:** If you pay off this loan early, you will: (a) not have to pay a prepayment penalty, and (b) not be entitled to a refund of any part of the Loan Origination Fee, if any.

**Security:** You are giving us a security interest in the motor vehicle described on Page 2 of this Agreement.

☐ Other Property: ____________________

**Additional Information:** You can see the rest of this Agreement for more information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| $ 0.00 | Loan Origination Fee (Prepaid Finance Charge) |
| $ 24192.00 | Amount Financed (Sum of amounts shown below) |
| $ 0.00 | Amount Paid on Your Accounts |
| $ 0.00 | NA |
| $ 0.00 | NA |
| $ 0.00 | NA |

AMOUNTS PAID TO OTHERS ON YOUR BEHALF

| | |
|---|---|
| $ 28.75 | To Public Officials for Recording Fees |
| $ 84.70 | To Public Officials for Doc Stamp Tax |
| $ 10269.67 | To FED CREDIT UNION |
| $ 13808.88 | To American Express |

☐ When this box is checked, itemization is continued on attached addendum.
*We may be retaining a portion of this amount.

**Other Transaction Information:**

| | |
|---|---|
| $ 24192.00 | Principal Amount of Loan (the Amount Financed plus any Loan Origination Fee) |
| 16.49% | Rate of Interest Per Year |
| $ 0.00 | Loan Origination Fee |

Closed By: ____________________ sign here

Florida documentary stamp tax required by law in the amount of $84.70 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration #94-1347393.

**YOU GRANT US A SECURITY INTEREST.** You give us a security interest in your property described below. This property is called **"Collateral."** You also give us a security interest in any accessions to and proceeds of the Collateral. Accessions are goods installed in or attached to the Collateral. Proceeds are money or property due to you from the loss, destruction or sale of the Collateral. You also give us a security interest in all Proceeds or refunds related to any insurance or service contract we finance for you. The purpose of this security interest is to protect us if you don't repay your loan, including any refinance, extension, or renewal of your loan, or if you break any promise made in this Agreement.

**THE SECTION BELOW DESCRIBES THE COLLATERAL COVERED BY THIS AGREEMENT:**

☒ Motor vehicle(s) described as follows:

| Year | Make | Model | Serial Number |
|---|---|---|---|
| 2006 | Honda | Accord | 1HGCM563X6A077043 |

You agree to sign or deliver any documents to us or do any other thing reasonably necessary for us to perfect or defend a first priority security interest in the Collateral. You also agree that any expense we incur perfecting or defending our security interest or obtaining any required documents shall, to the extent not covered by the proceeds of this Agreement, be immediately due and payable or, at our option, may be added to the amount due under this Agreement and will bear interest at the rate specified herein.

**CREDIT INFORMATION.** We may reexamine and reevaluate your creditworthiness at any time. To do so we may ask you for additional information, obtain your credit bureau report, contact your employer or otherwise verify your current credit standing. You agree to submit current financial information to us if we request it.

**WAIVER AND DELAY IN ENFORCEMENT.** No failure or delay to exercise any right or remedy under this Agreement shall be a waiver of our right to exercise such right or remedy in the future. We do not have to give you notice of any waiver, delay or release. Unless applicable law provides otherwise, we may use our other legal remedies against you before we take possession of any Collateral. You will not be released from your obligations under this loan if we exchange or release any Collateral.

**LATE CHARGE.** If any part of a payment is more than 10 days late, you will be charged a late charge equal to $39.00. No late charge will be assessed for a payment if a delinquency is caused only by previously incurred late charges that have not been paid and you have otherwise made a timely monthly payment of the principal, interest and all other charges currently due. Notwithstanding this, however, we may continue to report your account to credit reporting agencies as past due until such time as your payment of all amounts owed (including late charges, CPI [defined on page 4] premiums and other charges) is current.

**RETURNED PAYMENTS.** If a payment on this loan is made with a check, draft, electronic debit or any similar paper or electronic transaction that is dishonored for any reason (except an error by us), you agree to pay us $39.00.

Loan Date: 11/20/2008

**ADDITIONAL TERMS, Continued**

**THIRD PARTY COLLATERAL AGREEMENT**

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner hereby grants us a security interest in the Collateral to secure your performance under the Loan Agreement. Owner acknowledges that it has the same obligations and makes the same representations under the Loan Agreement as you with respect to the Collateral. For example, Owner has the duty to keep the Collateral insured, to provide us with evidence of insurance upon request, and to cause us to be named a loss payee on Owner's insurance policy. Also, Owner represents that Owner owns the Collateral or a part of it and that no one else, other than you, has any interest in or claim against the Collateral that has not been disclosed to us in writing. Owner assumes no personal responsibility for the payment of any amounts owed under the Loan Agreement. Owner agrees that we may, without releasing Owner from this Third Party Collateral Agreement and without notice or consent from Owner, extend additional credit to you or enter into an agreement with you to modify, extend, or waive the terms of the Loan Agreement.

| Owner Name and Address | | Owner Name and Address | |
|---|---|---|---|
| **N/A** | | **N/A** | |
| **N/A** | SIGN HERE | **N/A** | SIGN HERE |

**DEFAULT.** Subject to limitations under state or federal law, you will be in Default on this Agreement (**"Default"**) if:

1. You don't pay the full amount of a required payment when due;
2. You break any promise or condition in this Agreement or in any security instrument that secures the payment of this Agreement;
3. You provide us with false, misleading or materially incomplete information in connection with your loan application or on any document provided to us;
4. An Owner breaks a promise or condition of the Third Party Collateral Agreement; or
5. Any other event occurs that in our judgment significantly decreases the likelihood of your performance or reduces our ability to benefit from the Collateral.

**Idaho, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska and South Carolina Residents:** If you reside in Idaho, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska or South Carolina at the time we enforce this agreement, the following events of default apply (instead of those described in 1-5 above):

1. You fail to make any monthly payment within 10 days after its due date; or
2. You fail to observe any other provision of this Agreement, which significantly impairs your prospect to pay amounts due under this Agreement or reduces our ability to benefit from the Collateral. We will bear the burden of proving significant impairment.

**Wisconsin Residents:** If you reside in Wisconsin at the time we enforce this agreement, the following events of default apply (instead of those described in 1-5 above):

1. You permit to be outstanding an amount exceeding one full payment that has remained unpaid for more than 10 days after its scheduled or deferred due date or you have not paid your first payment or your last payment within 40 days of its scheduled or deferred due date; or
2. You fail to observe any other covenant of this Agreement, breach of which materially impairs the condition, value or protection of our right to the Collateral or your ability to pay amounts due under this Agreement.

**REMEDIES FOR DEFAULT.** If you are in Default, you agree that subject to limitations and notice requirements under applicable law and without first giving you notice we can: a) require you to pay the remaining balance of this Agreement in full immediately; b) use any remedies available to us by law or this Agreement; c) make a claim for any insurance benefits or premium refunds that may be available as a result of your Default; or d) without first obtaining court approval, take possession of the Collateral wherever it may be found. We may keep the Collateral in full satisfaction of what you owe or sell the Collateral in a commercially reasonable manner. The money that we get from the sale (after paying our costs, including reasonable costs of repair) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference, unless limited by law. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else, such as a junior lienholder.

**COLLECTION COSTS AND ATTORNEYS' FEES.** You will pay our collection costs, attorneys' fees and other expenses of enforcing our rights under this Agreement. This includes, subject to any limits or prohibitions under applicable law, our reasonable attorneys' fees and expenses if we refer the matter to an attorney, whether or not such attorney is an employee of ours, and whether or not there is a lawsuit or arbitration, including without limitation, all reasonable attorneys' fees and legal expenses for appeals, anticipated post-judgment collection services and bankruptcy proceedings (such as case monitoring, proof of claim and efforts to modify or vacate any alternative stay) plus any court costs and other sums provided by law.

**OPTIONAL ACH AUTHORIZATION.**☐ If checked, you will provide us with a voided check, and your signature on this agreement authorizes us, our successors and assigns, to take each regularly scheduled payment plus any late charge, past due payments, returned check fees, CPI (see Insurance on Collateral on Page 4) premiums or other amounts then owing under this agreement from your account number located at Our standard paractice is to provide a prior notice of any transfer that exceeds three times the sum of the regularly scheduled payment plus any late charge amount. You have the right to receive notice of all transfers varying from the regular payment amount but unless you provide written instructions exercising this right, your signature confirms our standard practice as your option. . This authorization will remain effective until all amounts due under this agreement are paid in full, we notify you of the revocation or you notify us that you wish to revoke your authorization and we are given a reasonable opportunity to act on your request. You may revoke your authorization by sending a written notice to Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-8988, or by calling us at 1-800-55WELLS (1-800-559-3557).

**RESEARCH/INVESTIGATION FEE AND PHOTOCOPY/FACSIMILE FEE.** In the event that you request or authorize a request to investigate your account or provide copies of account documents for any purpose, you will be charged a reasonable fee, unless prohibited by law, for these services.

**ACCORD AND SATISFACTION AND IRREGULAR PAYMENTS.** We may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of our rights under this Agreement. Our acceptance of checks or money orders labeled "payment in full", or words to that effect will not constitute an accord and satisfaction or a waiver of any rights we have to receive full payment. If you intend to pay your loan in full with an amount less than the total balance we determine is owing on your loan, payment must be sent to Wells Fargo Auto Finance, P.O. Box 29715, Phoenix, AZ 85038-9715, Attn: Payoff Exceptions and not to the payment address indicated on your statement or payment voucher. Please note that such payments will not discharge your full debt if sent to the statement or voucher address and will do so if sent to our accord and satisfaction address only if we agree to accept your payment as such.

**PURPOSE OF LOAN.** You agree that this loan was obtained primarily for personal, family or household purposes.

**TELEPHONE MONITORING AND CONTACTING YOU.** From time to time we may monitor and record telephone calls regarding your account to assure the quality of our service. You agree, in order for us to service the account or to collect any amounts you may owe, that we may from time to time make calls and/or send e-mails and/or text messages to you, using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your account, including wireless telephone numbers that could result in charges to you, or at any e-mail address you provide to us.

## ADDITIONAL TERMS, Continued

**POWER OF ATTORNEY.** You appoint us, through our officers, employees and agents, as your true attorney-in-fact to perform any of the following powers, whether or not you are in Default: a) to execute all documents necessary to perfect, preserve or release our interest in the Collateral and b) to collect, receive and execute payments or other instruments related to insurance claims or losses and to apply such payments, at our sole discretion toward repayment of the obligations of this Agreement or replacement of the Collateral. This appointment shall remain in effect during the term of this Agreement and is a power coupled with an interest (which means you cannot cancel this power of attorney during this Agreement).

**PROTECTING THE COLLATERAL.** Unless the Owner is the only person who owns the Collateral, you represent that you own the Collateral or a part of it and that no one else, other than the Owner, has any interest in or claim against the Collateral that has not been disclosed to us in writing. Unless you have our written consent, you promise 1) not to sell, lease or give the Collateral to anyone else; 2) to keep the Collateral free from claims of others, whether or not justified (for example, forfeiture or seizure for alleged illegal acts; taxes; towing, storage or repair liens; fines; and security interests); 3) to keep the Collateral in good repair and keep it in your possession at one of your addresses indicated on page 1 of this Agreement; 4) not to take the Collateral outside the United States for more than 30 days; 5) to operate the Collateral in accord with all applicable statutes, rules and regulations; and 6) to use the Collateral only for personal, family or household purposes. If you fail to keep the Collateral free from claims of others or fail to keep the Collateral in good repair as required under this section, we may pay the claims or pay the cost to repair the Collateral (but we are not required to). Any such sums we pay shall be immediately due and payable or, at our option, may be added to the amount due under this Agreement and will bear interest at the rate specified herein.

**INSURANCE ON COLLATERAL**

**YOU MUST KEEP THE COLLATERAL INSURED.** You will keep the Collateral insured against physical damage and loss until you pay this loan in full. Collision and comprehensive or all-risk insurance would satisfy this requirement. You may buy the insurance from anyone you want, but the insurance company, the amount of insurance and the deductible, which may never exceed $1,000 unless we agree otherwise, must be acceptable to us. The policy shall name us as a secured party, provide for payment to us in case of loss and require written notice to us at least 10 days before cancellation or changes to coverage. You will give us a copy of the policy or give us other proof of the required insurance acceptable to us.

**COLLATERAL PROTECTION INSURANCE.** If you fail to keep the Collateral insured as required or fail to give us proof of the required insurance acceptable to us, we may, but we are not required to, buy Collateral Protection Insurance ("**CPI**") to protect our interest in the Collateral. The CPI may, but need not, also protect your interest. If you have not given us proof that the required insurance was in force as of the date of this loan, the effective date of the CPI can be as early as the date of this loan, even if the certificate of insurance for the CPI is not issued until later. If you have given us proof that the required insurance was effective as of the date of this loan, the effective date of the CPI can be as early as the date the required insurance expired or was cancelled, even if the certificate of insurance for the CPI is not issued until later.

**PAYMENT FOR CPI.** You are responsible for the cost of any CPI purchased by us. If we buy CPI, we may add the premium for the CPI to the unpaid balance of your loan and increase your monthly payment to pay the premium during the remaining term of the CPI; or we may require you to pay the full premium for the CPI immediately.

**CANCELLATION OF CPI.** If we buy CPI, you may still obtain the required insurance from the insurance company or agent of your choice. If you do this and give us proof of the required insurance acceptable to us, we will cancel the CPI as of the effective date of the insurance you obtain. If your account is paid off while the CPI is in effect, we will cancel the CPI as of the date your account is paid off. If we cancel the CPI, we will credit any refund of unearned insurance premium to your account. You will remain obligated to pay any earned insurance premium.

**IT IS BETTER FOR YOU TO GET YOUR OWN INSURANCE.** If we buy CPI, it will probably be more expensive and provide less insurance protection than insurance you could obtain from the insurance company or agent of your choice. The amount the CPI will pay may be less than the unpaid balance of your loan and may be less than the full value of the Collateral. We urge you to contact an insurance agent to assist you in evaluating your own insurance needs and to advise you whether other, less expensive, insurance is available.

**LIABILITY INSURANCE COVERAGE. Liability insurance coverage for bodily injury and property damage caused to others is not included in any CPI coverage we may obtain under this Agreement.**

**REPAIR OR REPLACEMENT OF COLLATERAL.** If any Collateral is damaged or lost, you will notify us immediately of the loss or damage. You will instruct any insurance company and anyone else liable for the damage or loss to pay any money as a result of the damage or loss (including but not limited to, insurance proceeds) to you and us jointly. Upon receipt, you agree to endorse any such payments and deliver them to us for collection. We may, at our option, either agree to use such payments for the repair or replacement of the Collateral or apply these payments to your debt under this Agreement. If we agree to use such funds for repair or replacement of the Collateral, we may release such funds to you or may hold such funds for payment directly to the vendor providing such services or selling the replacement collateral upon our satisfaction with such repair or replacement. You agree that we won't release any amount to you if you are in Default under this Agreement. If any amount is released to you, you agree that you must repair or replace the Collateral to our satisfaction and must sign any documents or do whatever else is necessary to give us a security interest in the repaired or replaced Collateral. You agree to repair or replace the property promptly.

**ADDITIONAL SIGNERS.** If there is more than one Borrower on this Agreement, each of you remain responsible for this loan even if we fail to notify you that there has been a Default. A Default by one of you will be a Default by all of you. You also agree to remain responsible if we change the terms of payment or release any Collateral without notifying you. If we release any of you from the loan, the rest of you will not be released. We do not have to use our legal remedies against any one of you before we use our legal remedies against any of the rest of you. An Owner has no personal responsibility for the payment of any amounts owed under this Agreement. If any Borrower or Owner dies or is discharged from liability under the United States Bankruptcy Code or similar law, you will still be liable for this loan. A court decree for divorce or separation or a non-court mutual agreement does not affect our ability to enforce this Agreement or collect the outstanding amount owing against all jointly liable parties if we were not a party to the decree or agreement.

Loan Date: 11/20/2008

**ADDITIONAL TERMS, Continued**

**GOVERNING LAW.** Unless prohibited by applicable law, this Note, as well as our rights and duties and your rights and duties regarding this Note, will be governed by and interpreted in accordance with the laws of the State of South Dakota and the United States and, to the extent required, to the laws of the state where the Collateral is located, regardless of where you may reside. You acknowledge this choice of law is made because Wells Fargo is a national banking association with its main office in South Dakota and to insure uniform procedures and interpretation for all of our customers no matter where they reside. You agree that if any term or provision of this Note is held to be unenforceable, void, illegal, or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provision.

**INFORMATION REPORTED TO CREDIT BUREAUS.** If you believe we have reported incorrect information about your account to a credit bureau, you may notify us by writing to us at Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-9704, Attn: Resolution Team. Please include your account number and a description of the information that is incorrect.

**DISPUTE RESOLUTION PROGRAM: ARBITRATION PROVISION.**

1. Non-Judicial Resolution of Disputes. If you have a dispute with us, and you and we (collectively, the "parties" and individually, a "party") are not able to resolve the dispute informally, the parties agree that any dispute, regardless of when it arose, shall be resolved by the following arbitration process. You understand and agree that each party is waiving the right to a jury trial or a trial before a judge in a public court. As an exception to this Arbitration Agreement, the parties retain the right to pursue in small claims court any dispute that is within that court's jurisdiction.

2. Disputes. A dispute is any unresolved disagreement between the parties. It includes, but is not limited to, any dispute relating in any way to the Agreement or related services or matters described in this Agreement. It includes claims based on broken promises or contracts, torts (injuries caused by negligent or intentional conduct) or other wrongful actions. It also includes statutory, common law and equitable claims. A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Provision. **Neither party shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity. The parties agree that if the preceding sentence is held to be invalid, then the arbitration provision that governs the Note shall be null and void in its entirety.**

3. Binding Arbitration. Binding arbitration is a means of having an independent third person resolve a dispute without using the court system, judges or juries. Either party may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. If either party fails to submit to binding arbitration following a lawful demand, the one who fails to so submit bears all costs and expenses incurred by the other compelling arbitration. Each arbitration, including the selection of the arbitrator(s), shall be administered by the American Arbitration Association (AAA). The arbitration will be conducted pursuant to the rules of the AAA ("AAA Rules") which are in effect on the date a dispute is submitted to the AAA. Information about the American Arbitration Association, its rules, and its forms are available from the American Arbitration Association on the internet at http://www.adr.org or from the American Arbitration Association at 1633 Broadway, 10th Floor, New York, New York 10019. To the extent that there is any variance between the AAA Rules and this Arbitration Provision this Arbitration Provision shall control. The Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the dispute. Either party may require that the arbitrator be a retired federal judge.

4. Federal Arbitration Act. The parties agree that in this relationship: (1) The parties are participating in transactions involving interstate commerce; and (2) Each arbitration is governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state that govern the relationship between the parties about which the dispute arose.

5. Rights Preserved. This Arbitration Provision and the exercise of any of the rights the parties have under this Arbitration Provision does not stop either party from exercising any lawful rights to use other remedies available to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court having jurisdiction.

6. Miscellaneous. The parties agree to take all steps and execute all documents necessary for the implementation of arbitration proceedings. The arbitrator may hear and rule on appropriate dispositive motions as part of the arbitration proceedings, such as motions for judgments on the pleadings, summary judgment or partial summary judgment. The parties must not disclose the existence, content or results of the arbitration, except for disclosures of information required in the ordinary course of business or permitted by applicable law or regulation. This provision shall be liberally construed in order to ensure the enforcement of this Arbitration Provision. Arbitration proceedings are conducted in the state in which you reside when you applied for the extension of credit or at a location determined by the AAA. All statutes of limitations applicable to any dispute apply to any arbitration between the parties. The provisions of this Arbitration Provision shall survive termination, amendment or expiration of this Agreement or any other relationship between the parties. This Arbitration Provision constitutes the entire agreement between the parties and supersedes all prior arrangements and other communications concerning dispute resolution. If more than one arbitration provision entered into by the parties is potentially applicable to the dispute, the one most directly related to the account or transaction that is the subject of the dispute shall control.

7. Fees and Expenses of Arbitration. If you start an arbitration proceeding, you agree to pay the initial filing fee required under the AAA Rules up to a maximum of $125. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees. We agree to pay for any part of the filing fee and any deposit required under the Rules in excess of $125. We also agree to pay the costs of the arbitration proceeding. If we start an arbitration proceeding, we will pay the filing fee, any deposit required under the rules and the costs of an arbitration proceeding. Each party shall be responsible for their own attorney, witness and expert fees and costs unless this Agreement (or applicable law) provides otherwise.

8. California Residents Only. In the event that you are a California resident, this Arbitration Provision shall apply only to disputes in which you seek to recover for yourself an amount of money, not including attorney fees and costs, that exceeds the jurisdictional dollar limit of the Small Claims Court.

Loan Date: 11/20/2008

**ADDITIONAL TERMS, Continued**

**STATE LAW NOTICES.** Each of the following notices applies only to the residents of the state indicated:

**CALIFORNIA RESIDENTS:** A married applicant may apply for a separate account. We may also obtain information about you or the Collateral at any time from the California Department of Motor Vehicles. You agree to waive the address confidentiality requirements of Section 1808.21 of the California Vehicle Code.

**CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

LOUISIANA RESIDENTS: **LOUISIANA LAW PERMITS REPOSSESSION OF MOTOR VEHICLES WITHOUT JUDICIAL PROCESS.**

**MISSOURI RESIDENTS:** ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**OHIO RESIDENTS:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**RHODE ISLAND RESIDENTS: NONNEGOTIABLE CONSUMER NOTE**

**MARRIED WISCONSIN RESIDENTS:** Your signature confirms that this loan obligation is being incurred in the interest of your marriage or family. No provision of any marital property agreement (premarital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects the interest of the lender unless the lender, prior to the time that the loan is approved, is furnished a copy of the marital property agreement, a statement, a decree or has actual knowledge of the adverse provision. If the loan for which you are applying is granted, your spouse will also receive notification that credit has been extended to you.

☐ If this box is checked, the following Notice applies:

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The following notice applies to you if you are not receiving a tangible benefit in the form of goods, services , or money in return for signing this Agreement.

**NOTICE TO CO-SIGNER**

**You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. We can collect this debt from you without first trying to collect from the Borrower. We can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing* your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.**

***Notwithstanding use of the word "garnishment" in this disclosure, state law prohibits garnishment of wages in the following states: Pennsylvania, North Carolina, South Carolina and Texas.**

Internal Use Only

Control Number:

Loan Date: 11/20/2008

VINtek THE NATION'S LIEN MACHINE.™

# Lien and Title Information Title Report
# 2355-Wells Fargo Auto Finance Inc

| | | | |
|---|---|---|---|
| **Account Number** | | **VIN** | 1HGCM563X6A077043 |
| **Customer** | CAMERE,LILIO ESTEBAN | | |
| **Organization ID** | 2355 | **Organization Name** | Wells Fargo Auto Finance Inc |
| **Lien Start** | 11/20/2008 | **Lien End** | 12/04/2014 |
| **Original Loan Amount** | $24,192.00 | **Lien Balance Amount** | $0.00 |
| **Lien Type** | Retail | **Dealer ID** | 00000 |

## LAST ELT Transactions

| | |
|---|---|
| Received On | |
| 1/5/09 10:40 PM | Add Record - Perfection of Lien |

## Borrower / Lessee Details

| | |
|---|---|
| **Name** | CAMERE,LILIO ESTEBAN |
| **CoSigner** | |
| **Address** | |

## Vehicle Information

| | | | |
|---|---|---|---|
| **VehicleType** | | **Make** | HOND |
| **Model** | | **Year** | 2006 |
| **Mileage** | 0 | | |

## Title Information

| | | | |
|---|---|---|---|
| **Title Number** | | **Title State** | FL |
| **Tag Number** | | **VIN** | 1HGCM563X6A077043 |
| **Status** | MATCHED 01/05/2009 | **Match Date** | 01/05/2009 |
| **Lien Expiration Date** | | | |

## State Information

| | |
|---|---|
| **Name** | CAMERE,LILIO ESTEBAN |
| **CoSigner** | |
| **Address** | |

| | | | |
|---|---|---|---|
| **Vehicle Type** | | **Make** | HOND |
| **Model** | | **Year** | 2006 |
| **Mileage** | 0 | | |
| **Title State** | FL | **Title Number** | |
| **Brands** | UnLaden Gross Vehicle Weight: 3109 | | |